UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRISCILLA TOWNSEND,

       Plaintiff,

                                           CASE NO. 1:17-CV-00223

v.

                                           HON. ROBERT J. JONKER

TRAVERSE CITY HOUSING
COMMISSION,

       Defendant.

_____/

## ORDER

      This matter is before the Court on Defendant Traverse City Housing Commission's Motion for Partial Dismissal (ECF No. 26). The Court has thoroughly reviewed all matters of record and carefully considered the applicable law. The Court does not believe oral argument is needed to resolve this Motion. For the following reasons, the Court **DENIES** the Motion for Partial Dismissal.

## BACKGROUND

      Plaintiff Priscilla Townsend is an 80-year-old resident of Riverview Terrace, a low-income housing community in Traverse City, Michigan. Riverview Terrace is owned by the Defendant Traverse City Housing Commission (TCHC), a municipal agency created under Michigan law through ordinance of Traverse City.

      Ms. Townsend is an active advocate for her fellow residents on food stamps and tenants' rights issues, and politically active. One issue involved a proposed building project to be built within thirty feet of Riverview Terrace. Ms. Townsend opposed the project and joined an effort to amend the Traverse City Charter to require a public vote for any building over 60 feet in height, called

"Prop 3." TCHC disagreed with Ms. Townsend's position and adopted a formal Resolution opposing Prop 3. Several TCHC Board members publicly advocated against Prop 3.

Plaintiff campaigned for Prop 3 and recruited some Riverview Terrace residents to the cause. Together they cut out signs in the shape of Halloween jack o'lanterns with the words "Yes 3" on them, and offered these signs to fourteen residents. Plaintiff and other residents in the housing unit taped these signs to the windows of their apartment residences to show their support for Prop 3. The following day, TCHC served eviction notices on each of the residents displaying the signs. The eviction notices cited the signs as a violation of the Riverview Terrace lease agreements, which required tenants to "refrain from placing signs of any type in or about the dwelling except those allowed under applicable zoning ordinances and then only after having received written permission of the TCHC." (ECF No. 1-1, PageID.12-13). Plaintiff also alleges that members of the TCHC Board told the news media that Plaintiff had "bullied" residents into using the jack o'lantern signs and compared the signs to "swastikas." *Id.* at PageID.12.

Plaintiff contacted legal counsel, who contacted the ACLU. The ACLU and Plaintiff's counsel sent notices of representation to Defendant TCHC. After receipt of these notices, TCHC formally rescinded all the eviction notices. *Id.* at PageID.13. On November 8, 2016, in the general election, Traverse City voters adopted "Prop 3."

Plaintiff's amended complaint alleges claims for violation of her First Amendment free speech, equal protection, and procedural due process rights under the Constitution. Defendant moves for partial dismissal under FED. R. CIV. P. 12(b)(6), arguing Plaintiff's complaint fails to state a cognizable claim under the Equal Protection and Due Process Clauses of the Fourteenth

Amendment. Additionally, Defendant claims it is entitled to qualified immunity. Plaintiff opposes Defendant's motion.

## LEGAL STANDARDS AND ANALYSIS

The Federal Rules provide that a claim may be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining whether a claim has facial plausibility, a court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.*

Plaintiff filed her claims under 42 U.S.C. § 1983 ("Section 1983") which provides in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

3

42 U.S.C. § 1983. To succeed on a Section 1983 claim, a plaintiff must establish: (1) a constitutional deprivation; (2) by a person acting under the color of state law. *Adair v. Charter Cty. of Wayne*, 452 F.3d 482, 491-92 (6th Cir. 2006) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992)). A municipality or other local governmental entity is considered a "person" under Section 1983 and may therefore be held liable for its actions depriving a plaintiff of her federal rights–commonly referred to as *Monell* liability. *Board of Cty. Comm'rs of Bryan Cty, Okl. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. N.Y.C. Dep't. of Social Servs.*, 436 U.S. 658, 694 (1978)). A municipality, however, will not be liable under Section 1983 simply because it employed the alleged unlawful actor. *Id.* Instead, "liability only attaches where a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation . . . ." *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) (quoting *Miller v. Sanilac Cty.*, 606 F.3d 240, 254-55 (6th Cir. 2010)). "A municipality can be liable under 42 U.S.C. § 1983 only if the plaintiff can demonstrate that his civil rights have been violated as a direct result of that municipality's policy or custom or if a failure to train amounts to deliberate indifference to such rights." *Burley v. Gagacki*, 729 F.3d 610, 618 (6th Cir. 2013) (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 900 (6th Cir. 2004) (internal quotation marks omitted)).

Because Section 1983 is a method for vindicating constitutional rights, not a source of substantive rights itself, the first step in any action under Section 1983 is to identify the specific constitutional rights at issue. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff claims Defendant violated her First Amendment, equal protection and procedural due process rights in this case. Defendant has not challenged Plaintiff's ability to proceed with the First Amendment claims, but does move to dismiss her other claims.

## I.      Equal Protection

The Equal Protection Clause of the federal constitution provides that "[n]o State shall . . .

deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV,

§ 1. The clause is "essentially a direction that all persons similarly situated should be treated alike.

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Ordinarily, "[t]o state a claim

under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally

discriminated against the plaintiff because of membership in a protected class." *Henry v.*

*Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990). Where "no suspect classifications or

fundamental rights" are at issue, however, rational basis review of a plaintiff's claim is appropriate.

*EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 865 (6th Cir. 2012). In such a case, a plaintiff

must show: "(1) that they were treated differently from others who were similarly situated; and (2)

that the differential treatment was motivated by discriminatory animus, to punish or inhibit plaintiffs'

exercise of constitutional rights, or with a malicious and bad faith intent to cause injury." *Oldfield*

*v. Village of Dansville*, 769 F. Supp. 2d 165, 171 (W.D.N.Y. 2011) (citations omitted). Additionally,

a "class of one" may bring an equal protection claim, "where the plaintiff alleges that the state treated

the plaintiff differently from others similarly situated and that there is no rational basis for such

difference in treatment." *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005) (citing *Village*

*of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Here, Plaintiff claims that she was a "member of a protected class of politically-active

residents of public housing." (ECF No. 20, PageID.168). As a comparator, Plaintiff alleges that

"residents who hung holiday decorations, religious references, cartoons, and other signage were not

threatened with eviction." *Id.* In contrast, as a political commentator using a holiday sign to express

a political opinion contrary to TCHC's own position, she and others were singled out for eviction notices.

Plaintiff's allegations–either as a class of one or as a member of the tenant group that supported Prop. 3–state a plausible equal protection claim. Plaintiff alleges she was treated differently–in fact, singled out with targeted hostility–from other, similarly-situated residents as a result of her actions taken in support of Prop. 3. Plaintiff alleges that she personally–and as a member of the group of residents supporting Prop. 3–was given eviction notices as a result of her actions and political speech: namely, TCHC gave Plaintiff and other tenants supporting Prop 3 eviction notices citing the fact they posted "Yes Prop. 3" jack o'lantern signs in their apartment windows. In contrast, Plaintiff alleges that "residents who hung holiday decorations, religious references, cartoons, and other signage were not threatened with eviction pursuant to the . . . lease provision." (ECF No. 20, PageID.168). Construing these allegations in light most favorable to Plaintiff, she has plead sufficient facts to state a plausible claim for violation of her equal protection rights. *See Bower v. Village of Mount Sterling*, 44 F. App'x 670, 676 (6th Cir. 2002) (holding applicant for police officer's allegations of targeted hostility by police chief in police force hiring process, and that he was similarly situated to others who were hired as officers, were sufficient to state equal protection claim).

## II.    Due Process

The Due Process Clause of the Fourteenth Amendment provides that no state "shall deprive any person of life, liberty, or property, without due process of law." "Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens*, 411 F.3d 697, 708

(6th Cir. 2005). "To establish a procedural due process violation, [a plaintiff] must demonstrate that 1) it possessed a constitutionally protected property or liberty interest; 2) it was deprived of that interest; and 3) the state did not afford it adequate procedural rights prior to depriving it of that interest." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 830 (6th Cir. 2009) (citing *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)). Here, Plaintiff claims Defendant violated her procedural due process rights by jeopardizing her tenancy without providing her with the opportunity to be heard and to clear her name.

Defendant does not dispute that Plaintiff has a protected property interest in her continued receipt of public housing accommodations (ECF No. 26, PageID.233). Nor could they, as the Sixth Circuit has held that "[p]articipation in a public housing program is a property interest protected by due process." *Woods v. Willis*, 515 F. App'x 471, 478 (6th Cir. 2013) (citing *Mansfield Metro Hous. Auth.*, 751 F.2d 180, 184 (6th Cir. 1984)). Instead, Defendant claims Plaintiff has failed to allege a plausible claim that she was ever deprived of her interest in public housing.

The Court holds that Plaintiff has plead sufficient facts establishing a deprivation–albeit a limited one–of her protected property interest in continued receipt of public housing accommodations. In *Mathews v. Eldridge*, the Supreme Court held that a deprivation, for purposes of a procedural due process claim, can occur when a beneficiary's receipt of benefits are placed on hold, pending the outcome of an administrative process. 424 U.S. 319, 340 (1976). A similar, limited deprivation occurred here. Defendant never actually evicted Plaintiff from her apartment. Nor did Defendant commence formal eviction proceedings against Plaintiff. Defendant did, however, communicate that Plaintiff's continued receipt of public housing accommodations was on hold and

would be canceled without further notice, unless Plaintiff removed the offending sign (ECF No. 20-7). Defendant made it clear that it would move ahead with the eviction process unless Plaintiff acceded to its demands. *Id.*

Although limited in nature, the deprivation in this case is enough to trigger due process protection. This is because the nature of the interest at stake–not its weight–determines the applicability of due process. *See Goss v. Lopez*, 419 U.S. 565, 575-76 (1975); *Board of Regents v. Roth*, 408 U.S. 564, 570-71 (1972). By burdening Plaintiff's interest in continued receipt of public housing accommodations, Defendant triggered due process protections for Plaintiff.

Regarding the adequacy of the procedure provided, the Sixth Circuit has held that in the context of public housing benefits, "[d]ue process requires that Housing Program participants receive adequate notice of the grounds for termination, and must be afforded an informal hearing prior to termination." *Woods*, 515 F. App'x at 478 (citation omitted). Here, Plaintiff alleges that Defendant "has not afforded Plaintiff an opportunity to challenge her eviction notice or to clear her Tenant File [of the eviction notice]." (ECF No. 28, PageID.272). Based on present allegations of the inability to contest the eviction notice itself or the overall threat of eviction, Plaintiff has certainly articulated a plausible basis for concluding that the process provided in this case was constitutionally deficient. Accordingly, Plaintiff's complaint states a plausible due process claim against Defendant.

## III.    Qualified Immunity

Defendant's final argument is that it is entitled to qualified immunity from Plaintiff's claim for violation of her procedural due process rights (ECF No. 26, PageID.236). It is well-established, however, that "municipalities have no immunity from damages liability flowing from their constitutional violations." *Owen v. City of Indep., Mo.*, 445 U.S. 622, 657 (1980); *see also*

*Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993) ("[U]nlike various government officials, municipalities do not enjoy immunity from suit–either absolute or qualified–under § 1983"); *Binkowski v. Family & Children's Servs. Agency*, 39 F. Supp. 2d 882, 886 (W.D. Mich. 1998) ("[Q]ualified immunity applies only to individuals, not government entities."). As a municipal entity, Defendant is not entitled to qualified immunity. Accordingly, Plaintiff may proceed with its claims against Defendant.

## CONCLUSION

**ACCORDINGLY, IT IS ORDERED** that Defendant TCHC's Motion for Partial Dismissal (ECF No. 26) is **DENIED**.


Dated:   _____August 2, 2017_____          _/s/ Robert J. Jonker_____
                                            ROBERT J. JONKER
                                            CHIEF UNITED STATES DISTRICT JUDGE